## THE RAMBLER.

### PRICE v. THE RAMBLER.

(District Court, S. D. New York. January 21, 1895.)

Tug and Tow—Ice—Towage at Night—Negligent Lookout.

An ordinary engagement of towage in the North river does not authorize the tug to take the tow in the nighttime, when thick running ice makes towing dangerous; and the R., having taken the tow alongside after dark, with its bow projecting 40 feet ahead of the tug, thus exposing the tow to the chief danger of being cut by ice, without maintaining any good lookout on the bow of the tow to avoid injurious cakes of ice, and running at such a rate that holes were cut through the bow of the tow, causing her to sink, the tug was *held* liable for the consequent loss: *Held*, also, that the duty to maintain a lookout on the bow of the tow was a part of the tug's duty in navigation, and that the boatman on the tow in acting to some extent as a lookout, at the tug's request, acted as the agent of the latter and at her risk.

This was a suit in rem by William A. Price against the steamtug Rambler to recover for damages occasioned by alleged negligent towing.

Hyland & Zabriskie and Mr. Hough, for libelant.

Stewart & Macklin, for respondent.

BROWN, District Judge. There is no sufficient evidence on the part of the respondent to discredit the testimony in the libelant's favor, showing that the canal boat McMahon, though old, was in good condition, sound in her planks and timbers, and reasonably fit for navigation. She was taken in tow by the Rambler alongside after dark, with her bows projecting 40 feet ahead of the tug, and in that manner towed through ice in the North river, during which a hole was cut through two planks in her bow, which caused her to sink speedily. The manner of towing, in effect, placed most of the liability to damage from ice and the danger from cutting through any cakes that were met, upon the canal boat; whereas the tug was much better designed for this work, and could do it much more safely. The tug also did not take the straightest course across the water, but headed four points down river, which still further relieved the tug at the expense of the tow. It does not appear that the tug had orders to tow the boat through ice; I must assume that the orders were the usual orders for towage, and were no justification for towing in such ice as made towage dangerous, or towing in the nighttime, when dangerous cakes could not be distinguished far enough ahead to avoid injury from them. The man on the barge testifies that he objected to starting after dark, and asked the tug to wait till morning.

If towing alongside in ice, and in the nighttime, could be justified, with the bow of the tug placed so far ahead, it was the duty of the tug to maintain a careful and competent lookout on the bow of the canal boat, and to proceed with great caution in order to stop in time to prevent any rapid crashing into the larger

cakes. This was a duty strictly belonging to the tug's navigation. Such a watch and lookout were not at all the duty of the man on the canal boat. So far as the latter endeavored to keep a lookout at the pilot's request, he was acting as the tug's agent, and at the tug's risk, and not on the responsibility of the libelant. The boatman's evidence shows that the pilot of the tug treated him with small consideration. It is evident that the pilot made no attempt to establish and keep up a competent and efficient lookout from the bow of the canal boat; but only told the boatman to look out for ice. I infer that at the time when the chief crash and shivering of the boat referred to by the boatman took place, he was absent from the bows and was either below, or aft; and that no person was on the lookout to avoid those cakes. They could not be seen in time from the pilot house; and there was no fixed lookout at the bow of the tug.

I must find, therefore, that the damage arose from the fault of the tug in taking the tow through ice in the nighttime without a due regard to the safety of the tow on such a trip, and without maintaining such care and attention as was reasonably necessary to avoid injury to the tow by crashing into the cakes of ice in her path. The tug's witnesses say no shivering was felt upon the tug; but this seems to me of little weight; since it was the canal boat, and not the tug, that was principally exposed.

Decree for libelant, with costs.