THE ZOUAVE. THE UNCLE ABE. THE BELLE McWILLIAMS.

(District Court, S. D. New York. March 4, 1903.)

**1.** TOWAGE—DAMAGE TO TOW IN PASSING THROUGH HELL GATE—IMPROPER COURSE OF TUGS.

Two tugs which were taking a tow of ten boats through Hell Gate *held* liable for the injury of a tow by striking on rocks on the Long Island shore, on the ground that they did not keep the proper course, which, in the state of the tide, was close to the opposite side, and in having insufficient power to properly handle so large and unwieldy a tow in making the passage.

In Admiralty. Suit against tugs for injury to tow.

Robinson, Biddle & Ward, for libellant.

James J. Macklin, for claimant.

ADAMS, District Judge. The libellant claims to be entitled to recover damages from the tugs Zouave, Uncle Abe and Belle McWilliams for an injury, caused by their negligence, to the barge D. & R. No. 7, owned by it, and the cargo of coal on board, of which it was bailee. The accident happened on the 16th day of February, 1902. The Zouave and Uncle Abe were towing, on hawsers, a flotilla· of ten boats, arranged in two tiers of five each, of which No. 7 was the starboard boat in the last tier. The Zouave was the principal towing boat and about ahead of the centre of the tow. She was using two hawsers, about 180 feet long each, leading at an angle, respectively from her aft bitts to the bitts of the outermost boats in the forward tier. The Uncle Abe was assisting with a single hawser of about 155 feet in length, leading straight from her aft bitts to the bitts of the boat next to the outermost boat on the starboard side. The tugs were side by side. The total length of the tow, from the stems of the tugs to the sterns of the boats in tow, was a little less than 500 feet. The tow started from Morris Street, Jersey City, at about 12 o'clock noon, on the said day, bound for New Haven, through the East River and Long Island Sound. At about 3.45 o'clock P. M., just after passing through Hell Gate, some of the boats in the last tier—No. 7, The Annie M. Brown and W. A. P. 18—were brought into collision with some rocks on the Long Island shore, opposite Ward's Island, called on the chart Scaly Rock, but known as Steep Rocks. The tide at this time was about two hours flood and running about four miles an hour. Some floating ice was encountered as the tow passed Hog's Back, which, it is claimed, swung the tail of the tow to the eastward, out of the channel, causing the disaster. The W. A. P. 18, which drew more water than the others, remained on the rocks and the tugs went on with the rest of the tow, till the vicinity of North Brother's Island was reached. Heavy ice was then encountered, which retarded the progress of the tow and the Zouave went back to look after W. A. P. 18. She got this boat off and rejoined the tow with her, in the vicinity of Throgg's Neck, having been away from the tow about an hour. By this time it was after 7 o'clock. The master of the Zouave was then notified that No. 7 was leaking and had about 2½ feet

of water in her. The Uncle Abe was put alongside and endeavored to free her by pumping. About this time the Belle McWilliams, which was going through the river, light, to New York, from the East, was hailed by the master of the Zouave and went alongside No. 7 and assisted in pumping, but the water from the leak gained on the tugs and they were obliged to take the boat out of the tow and beach her on City Island.

The libellant alleges negligence on the part of the Zouave and Uncle Abe (1) in endeavoring to pass Hell Gate with too large and unwieldy a tow, (2) in not steering properly to avoid the rocks, (3) in permitting the tow to take a sheer and failing to break the same in time, (4) in not providing a helper tug to assist, at the stern of the tow, to counteract the effect of the tide, and (5) in failing to keep the tow from contact with a well known obstruction to navigation. It also alleges fault against the Uncle Abe and the McWilliams in running No. 7 on the beach in an improper manner and at an improper place.

The claimant denies all the charges of fault and alleges that the contact with Steep Rocks was of an inevitable character and could not be avoided.

Testimony was taken on both sides of the controversy and I find therefrom, that the usual and proper course for tows in passing eastward through the Gate in the flood tide was to keep well over to the Hog's Back and close to the Ward's Island shore around Negro Point. It is claimed by the pilot of the Zouave, who was in charge of the navigation of the tow, that he did keep 75 to 100 feet off Ward's Island, the tow following, but that the ice swung the tail of the tow with the result described. The contention of the pilot is disputed by the testimony of the men on the tow, who say that instead of keeping over close to Ward's Island, as was usual, they went through the middle of the river, rather on the Long Island side. It appears that the set of the current is on the rocks in question, which renders it necessary to keep on the Ward's Island side in order to pass them safely, if there is a tendency of the tow to swing across the current. The testimony generally shows that at the time of the contact, the tow was going sidewise with the current, and it is obvious that the tug could not have been near the Ward's Island shore, because if such had been the case, the tow, less than 500 feet in length, was not long enough to reach the rocks, which were about 650 to 700 feet from the Ward's Island shore. The claimant's contention must, therefore, be rejected.

It also appears that the towing tugs had not sufficient power to properly care for the tow under the circumstances. The tugs exerted all their power but were only able to make a speed not to exceed 5 miles per hour. Of this, 4 miles were due to current. It was required that the tugs should keep ahead of the tow in the proper performance of their duties but this they were unable to do. It is urged in their behalf that this was due to the sudden release of an ice pack from Hog's Back, which struck the tail of the tow and forced it around and across the channel. Even if it be assumed that such was the case, the testimony shows that it is common for

ice to be so released on the rising tide at this season of the year and those in charge of the tug should have anticipated such an occurrence and provided against it. But the claimant's evidence is not very persuasive that the ice was of heavy enough character to produce such a result. The ice would naturally drift in the same current that the tow was navigating in and if the latter had been reasonably straight at the time of the contact and under the control of the tugs, it does not seem that the ice would have had the effect contended for.

I think the testimony and the circumstances sufficiently establish that the tugs Zouave and Uncle Abe were negligent in the particulars mentioned herein and that the damages resulted therefrom. I find no credible testimony to sustain the charges against the McWilliams and the libel as to her will be dismissed.

Decree for the libellant, with an order of reference.