## THE CHARLES B. SANDFORD.

### (Circuit Court of Appeals, Second Circuit. February 10, 1913.)

### No. 123.

TOWAGE (§ 11*)—LIABILITY FOR LOSS OF TOW—TUG OF INSUFFICIENT POWER.
   A tug, which undertook to tow nine barges in Long Island Sound, which she had not sufficient power to safely handle in such bad weather as might reasonably be anticipated, *held* liable for the loss of part of her tow in a storm, which was not of an unusual or extraordinary character.
   [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

Appeal from the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

Petition in admiralty by John Scully, owner of the steam tug Charles B. Sandford, for limitation of liability. From a decree holding the tug solely in fault for the loss of part of her tow, petitioner appeals. Affirmed.

De Lagnel Berier, of New York City, for appellant.

Wilcox & Green, of New York City (Herbert Green, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. We concur with Judge Hand in the finding that the storm was not of an unusual or extraordinary character. One might expect to encounter such a storm in that part of Long Island Sound at any time. We also concur in his conclusion that the Sandford

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was not of sufficient power to undertake to haul such a tow as this through the Sound with the chance of meeting such a storm. The event shows this quite clearly.

It is contended on appeal that her lack of power was not the cause of the catastrophe, because before it happened her own power was supplemented by the much great power of the Hokendauqua. This presents a question of fact: Whether the Hokendauqua made fast to the Sandford before or after the towing hawser of the barges parted. There is a sharp conflict of testimony on this point; some of those on the tow say she made fast before. On the other hand, the petition of the owner of the Sandford avers that it was subsequently, while she was proceeding to New Haven, with what was left of her tow, intending after getting those in a place of safety to return and look for the others. The master of the Sandford, who certainly ought to know, testified positively that it was not until some time after the hawser parted. The master of the Hokendauqua says merely that the condition of the tow looked all right to him—it was a dark night—and that he supposed the whole nine were there. But he also says that when he arrived they were "pulling along for New Haven." The hawser broke when they were near Faulkner Island, and when it broke they were heading for the Long Island shore "somewheres around S. W." They did not head "to the westward for New Haven" until after it parted.

The decree is affirmed on the opinion of the District Judge.