## THE BULLEY.

(Circuit Court of Appeals, Second Circuit. April 14, 1920.)

No. 188.

Towage ⬰11(8)—Tug not liable for stranding of tow, caused by floating ice.

A tug, which left Newtown creek at night, as was customary, with three coal barges in tow, and took the customary course for passing through the Gate, *held* not chargeable with negligence which rendered her liable for injury to her tow, which was forced by an ice field drifting with the flood tide upon Man-of-War reef; there being no indication of unusual danger from the ice, which rendered her leaving the creek improvident, and she having done all within her power to protect her tow after stranding.

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Libels by the New York, New Haven & Hartford Railroad Company and by Mesick & Mesick, Incorporated, and others against the steam tug Bulley, Owen McCaffrey's Sons, claimant. Decrees for respondent, and libelants appeal. Affirmed.

Charles M. Sheafe, Jr., of New York City, for appellant New York, N. H. & H. R. Co.

Macklin, Brown & Purdy, of New York City (Pierre M. Brown, of New York City, of counsel), for appellants Mesick & Mesick and others.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The steam tug Bulley left Newtown creek with three coal-laden scows on the 13th of February, 1912, about 8:15 in the evening. The scows were the Ernest E. Wright, owned by the libelant Anthony O'Boyle, the Cullen No. 150, owned by the Cullen Barge Corporation, and the Harry W. Walker, owned by Mesick & Mesick, Incorporated. She was bound for Long Island Sound ports. The three boats were abreast of each other on a hawser; the Wright being the port boat, the Walker the middle boat, and the Cullen the starboard boat. It was a dark night and the tide

---

⬰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

strength flood. Although there was a considerable drift of ice in the harbor for some days past, navigation was not hindered or impeded because tugs and scows had navigated the harbor constantly. Weather records were offered and disclosed that ice was first observed that winter on February 6th. On the night in question there was little wind, but what there was blew from the southwest. There was scarcely any ice at the mouth of Newtown creek.

After going out of the mouth of the creek, the tug turned around under a port helm, so that she might get the hawsers and lines in proper shape and get the boats properly made fast, and then passed down by the mouth of the creek in slack water. This was customary on a flood tide. When abreast of the pier below the mouth of Newtown creek, she shifted her course off Twenty-Sixth street, Manhattan. Her passage was uneventful, except for meeting detached pieces of drifting ice, until near the Man-of-War rock. There a large field of drifting ice, bunched together, came up in the flood tide, and came in contact with the bows and port side of the tow, retarding the progress of the tug and tow toward the New York shore. Notwithstanding that all the power of the tug was exerted in pulling the tow away from the flow of heavy ice, the ice, influenced by the flood tide, carried the tow upon the Man-of-War reef. The Wright was damaged, and drifted further up the reef on Blackwell's Island, and stranded. The tug tried unsuccessfully to reach her. She struck her bottom in her attempt to do so. The two remaining scows were carried by the tide, floated from the reef, and were taken in tow by the tug and proceeded on through the Gate. Because of the darkness of the night, it was impossible for those in charge of the navigation of the Bulley to observe accurately the condition of the ice until they were in the midst of it.

The New York, New Haven & Hartford Railroad Company files this libel for damages sustained by the loss of cargo; the libelants Mesick & Mesick, Incorporated, file this libel as owners of the Walker against the tug for damages sustained by it; the Cullen Barge Corporation filed a libel for damages sustained by the Cullen No. 150; and Anthony O'Boyle filed a libel for damages sustained by the Wright. The actions were consolidated and tried as one. They are here treated in one opinion.

The contention of the libelants is that the master of the tug was at fault, because he started from Newtown creek at the strength of flood tide, knowing that ice was likely to be met, and in failing to make allowance in his course in case such ice was met. The appellee contends that there is no evidence to warrant a finding of negligence on the part of the tug in its navigation or meeting the extraordinary conditions of ice which prevailed in the river, and which were unknown to the master of the tug when he left the port. The master of the tug had been towing coal boats from Newtown creek for the past 10 years, and testified that he followed the uniform custom to proceed from Newtown creek during the night. He says it was customary to proceed from the creek, both in the nighttime and daytime. The Bul-

ley had navigated the harbor that day, was through Hell Gate, and had experienced no difficulty on account of the ice. When the master left Newtown creek in the evening, he did not anticipate trouble with the ice. He says the night was dark, and he was unable to observe the exact condition of the ice until they got out into the midst of the stream. The pilot of the tug corroborates the master, and says that the ice in the harbor gave him no apprehension. The engineer of the tug testified that the tow stranded on account of the ice.

The master of the Cullen No. 150 says that the tide and ice sent them on the Man-of-War reef. Brown, the master of the Walker, testified that the broken ice, which was observable to him, would not prevent a steam tug, with two or three barges, going from Newtown creek through the Gate. Brown did say that the tug did not seem to make over to the New York side, where they go as a rule, and "as we were going up close to Man-of-War rock we seemed to be too close to it, and we got up there, to swing around the tide carried the tow up the other way, the tug went up the west side, and the tow swung up the east channel, and the tug went up the west channel."

Brown testified that he told the captain of the tug he "had better hang up here until morning," to which the captain made no reply. The master of the Cullen No. 150 also made the same suggestion. However, the District Judge, who heard the witnesses, either disbelieved this testimony or considered it of little value, when taken in connection with the facts disclosed by other testimony.

A tow master of over 30 years' experience and at least 10 to 12 years in taking coal boats out of Newtown creek, bound for Eastern ports, testified that his tug, on the night of the 13th and the morning of the 14th, came into the harbor. He did not observe ice conditions that would give any trouble, and he said, "You could not tell the condition of the ice until you got into it." And he testified that the method of navigation pursued by the tug after leaving Newtown creek was the one every one towing out of the creek followed.

We find no evidence justifying the claim of negligence in the navigation of the tug in leaving the creek as she did under the conditions which prevailed. She followed the course which prudent navigators followed under similar circumstances. Nor was there any neglect in the navigation of the tug after she met with this field of ice. The ice was not observable when the tug, with her tow, left Newtown creek. Under these facts, we agree with the District Judge that the scows were driven on the reef as a result of the force of the field of ice, which was swept against the tow by the flood tide, and that the result could not be avoided by the exercise of reasonable and proper efforts on the part of the navigator. We recognize the rule that the captain of the tugboat must take note of the barometer, weather indications, and take reasonable precautions to guard against dangers to boats put in his care for towage. The Salutation (D. C.) 239 Fed. 421. But we find here no breach, on the part of the master, of such duty. The ice was not driven with violence against the scows, but was driven with force by the flood tide, and with such strength that the tug, although a

266 F.—3

powerful tug, sufficient for any ordinary navigation with a tow such as she had, was unable to withstand the force, so as to guard against being swept on the rocks.

We cannot say that the master of the tugs should have anticipated the tows being caught in the field of ice. There was no breach of duty in the failure to foresee such an occurrence. This, the original injury to the libelants' boats and cargo, was not caused by fault on the part of the tug. After the stranding, we find that the tug did all within her power—all that was reasonable and proper—to protect her tow from the consequences of the accident.

The authorities which we are referred to, and upon which the appellants depend, do not alter these conclusions. In The Zouave, 122 Fed. 890 (a District Court case), two tugs were towing ten boats through Hell Gate. The tugs were held liable for injury caused by striking rocks on the Long Island shore, but this was because the tugs did not take the proper course, which, in the state of the tide was close to the opposite side, and it was further found that the tugs had insufficient power to properly handle a large and unwieldy tow in making the passage. In The Charles B. Sandford, 204 Fed. 77, 122 C. C. A. 391, this court held the tug liable for loss of part of her tow in a storm which was of no unusual or extraordinary character. The liability was imposed upon the ground that the tug had not sufficient power to safely handle, in such bad weather, a tow of nine barges, and it was held that the particular storm was one to be anticipated.

In Price v. The Rambler (D. C.) 66 Fed. 355, damage was caused by the tow being cut by the ice. Fault was found in failing to have a prudent lookout on the bow, which might have avoided collision with the cakes of ice running at such a rate. Liability was attached for negligence of lookout. The fields of ice, under the conditions there prevailing, were both dangerous and well known, or should have been known to competent navigators. The facts were different from those disclosed in the case at bar.

We are of the opinion that no error was committed below, and the decree is affirmed.