## THE W. N. BAVIER.

(District Court, S. D. New York. October 6, 1924.)

1. **Towage** ⊂⊃11(8)—**Tug is not liable for damage to tow from ordinary floating ice, but is liable for damage because of her negligence when encountering dangerous conditions.**

Tug cannot be held responsible for damage to tow from floating ice, which is reasonably to be expected at such season, but is liable when dangerous conditions are met with, and as result of her negligence the tow is damaged.

2. **Towage** ⊂⊃11(8)—**Tug, starting with tow at time ice conditions were not unfavorable, held to have used due care in proceeding slowly when encountering ice field and following another tug.**

Where ice conditions, at time tug started with tow, were not unfavorable, and field of floating ice was met after starting trip, resulting in damage to barge being towed, from which it sank, tug *held* to have used due care in proceeding slowly on entering field of ice and following another tug, notwithstanding failure to have helper tug go ahead and break ice.

In Admiralty. Libel by Margaret Tague against the tug W. N. Bavier. Libel dismissed.

Macklin, Brown & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for libelant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Robert S. Erskine, of New York City, of counsel), for claimant.

GODDARD, District Judge. This suit is brought by the owner of the barge B. F. Guinan to recover damages for the loss of the barge, which was sunk by the ice while

in tow of claimant's tug W. N. Bavier in the early morning of February 18, 1920.

The barge, which had a cargo of 705 tons of coal, was taken in tow by the Bavier with another loaded barge at Edgewater, N. J., to be towed to Yonkers, N. Y. The Guinan was the hawser boat of the two barges, which were being towed on short hawsers. In the vicinity of Spuyten Duyvil, the Guinan came in collision with the ice, and she was so damaged that she sank soon after; when she was raised, it was found that six 4"x12" bow planks and eight 5"x9" oak timbers had been stove in.

At the time the arrangements for towing were made, there was a conversation between the owner of the barge and the tugboat people, which is admitted by libelant's witnesses to have been to the following effect:

"Q. The gist of the conversation was that there was a condition of ice in the river which might cause damage to the boat? A. I took it that way. * * *

"Q. You gave the order to Cornell's office? A. Yes.

"Q. And at the time you gave the order you heard there was some ice in the river? A. They told me. They asked me for a release.

"Q. And you told them to go ahead and tow? A. No; they wouldn't accept orders from me; they wanted to get the orders from the owner of the boat, and I put Mr. Tague on the phone, and he gave them orders to tow.

"Q. You wanted the boat towed? A. I wanted her towed; yes, sir."

When the tow started out from Edgewater, the ice conditions were not unfavorable, and counsel for the Guinan admits that the tug is not chargeable with fault for starting on the trip. When the tow reached the vicinity of Spuyten Duyvil, it met a field of floating ice extending nearly across the river from the New York shore. It was "not solid ice; it had all been broken up, * * * kind of mushy." Subsequent to the sinking of the Guinan, and as the tow neared Yonkers, the ice became so dense that, when the Bavier with her remaining barge came within about 200 feet of the dock, it was necessary for them to have another tug come out and help them into the dock; but this condition was not apparent when the tug first entered the ice field. The tug Peene, with two barges in tow, passed them on their port side, between them and the New Jersey shore, and the Bavier, with her tow, changed her course, so as to follow in the path made by the Peene. After she had been in the track of the Peene some 20 or 30 minutes, it was discovered that the Guinan was damaged, and soon afterward she sank. The tug had been proceeding slowly under one bell since entering the field of floating ice.

One of the faults complained of by the libelant is the failure of the Bavier to have a helper tug to go ahead and break the ice. But it does not seem to me that, under the circumstances, the claimant should be held responsible for not having one, particularly as, at the time when the sinking occurred, the Bavier, according to the barge captain's testimony, had been in the path of the Peene and her tow for 20 to 30 minutes, and it is admitted that the barge must have sunk almost immediately after she was damaged. The navigators of the Bavier were exceptionally experienced, having held their licenses 25 and 40 years, respectively. They did not consider the conditions unusual, or anticipate any unusual danger, and I am satisfied that in their judgment they performed the towage services properly. The captain of the Peene did not think that the Bavier and her tow were in danger.

The Circuit Court of Appeals in The Victoria (1899) 95 F. 184, said at page 187 (37 C. C. A. 40, 42): "As was stated in Sewall v. La Champagne, 8 C. C. A. 624, 60 F. 299, this court is reluctant to substitute its judgment upon appearances it has not seen for that of * * * competent navigators."

In The Bulley, 266 F. 31, a tug and tow left Newtown creek, bound for Long Island Sound ports, and one of the tow was swept aground upon Man-of-War reef by the ice. When she left Newtown creek, she knew that she would encounter ice, but did not anticipate that the ice would cause any unusual difficulties; the tow's master testifying that "you could not tell the condition of the ice until you got into it." Judge Manton, in the opinion of the Circuit Court of Appeals, says: "When the master left Newtown creek in the evening, he did not anticipate trouble with the ice. * * * The pilot of the tug corroborates the master, and says that the ice in the harbor gave him no apprehension. * * * We cannot say that the master of the tugs should have anticipated the tows being caught in the field of ice. There was no breach of duty in the failure to foresee such an occurrence."

In The Edwin Terry, 162 F. 311, at page 312, 89 C. C. A. 19, 20, the Circuit Court of this Circuit said: " * * * People who navigate the Hudson river at 3 o'clock in the morning of a day in February take their

chances of meeting ice, and so far as we can see none other than the ordinary chances were encountered here."

[1] The flow of ice which the Bavier and her tow met was not solid ice, but broken, mushy ice, and no unusual dangers were apprehended; this, of course, does not mean that then the voyage was free from all danger from ice conditions, because not only did all concerned know that probably some ice would be met with, but every one knows that there usually is some floating ice in the river at that season of the year. The tug cannot be held responsible for damage from such floating ice; it is liable, however, when dangerous conditions are met with, and, as a result of her negligence, the tow is damaged. The Hercules, 213 F. 615, 130 C. C. A. 207; Monk v. Cornell Steamboat Co., 198 F. 472, 117 C. C. A. 232.

[2] I find that due care was used by the tug Bavier; so the libel is dismissed, with costs.