## THE GOLDEN AGE.

(Circuit Court of Appeals, Second Circuit. March 2, 1925.)

No. 216.

Towage ⫸11(7)—Tug held in fault for injury to tow by striking bridge abutment.

A tug held in fault, and liable for injury to a barge in tow alongside, on a clear and calm day, by striking the stone abutment of a properly constructed drawbridge below the water line. ·

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Gleason Lighterage Company against the steam tug Golden Age, the Newtown Creek Towing Company, claimant, with the City of New York impleaded. Decree for defendants, and libelant appeals. Affirmed as to the City of New York, and reversed as to Newtown Creek Towing Company.

Macklin, Brown & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellant.

Alexander & Ash, of New York City (Edward Ash, of New York City, of counsel), for claimant appellee.

George P. Nicholson, of New York City (Charles J. Carroll, of Brooklyn, and John T. Condon, of New York City, of counsel), for impleaded respondent.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. A bridge crosses Newtown creek at Meeker avenue, borough of Queens, city of New York. It consists of a draw, which revolves on a center pan located on a pier in the river, and ends. The ends of the draw, when closed, rest upon stone piers close to the Brooklyn and Long Island shores of the creek. The westerly abutment of the bridge is made of ordinary rough stone blocks with ragged facings. There is testimony that the river faces of the abutment from a mean low water line extend downward for a distance of 8 feet, and then extend outward into the river about 18 inches, and from that point again extend down 24 inches, and finally rest upon the founda

tion of the abutment, which consists of sand and small stones. The bottom was rounded at each end and slightly extended outward as it goes down, so as to give a little better base when stones are put into place.

The libelant's barge Page is 103 feet long, 12-foot sides amidships, and was 18 inches higher on either end, with a beam of about 25 feet on top. The master of the barge testified that, at the time of the collision herein referred to, she was drawing about 7 feet of water. On July 10, 1919, this barge was made fast to the claimant's tug Golden Age on the starboard side in the usual and customary manner. The barge was to be landed starboard side to the dock. The tug and barge entered the starboard or right side of the draw, going up the creek, which is between the center span and the abutment just off the Brooklyn shore. While going through the right-hand side of the bridge, the starboard corner of this barge came in contact with the abutment at a point about the middle of the abutment. This point of contact was 4½ feet from the bottom of the Page and below her water line. Some of the stern planks were damaged, and her cargo of cement on board suffered damage. There is evidence that the master of the tug had about 8 months' experience, and he had some difficulty in passing through the draw with the barge alongside. He said: "Well, the difficulty was there was not much room to do it," and that "the boat Page fetched up her stern corner on the abutment, the stone abutment on the Brooklyn shore; * * * it hit something below the water." The construction of the abutment of the bridge, as thus described, was not a danger to navigation in these waters. It appears that this bridge was rebuilt in 1892, and was located by the plan approved by the federal authorities.

It is fully established that damage was due to the contact between the barge and the abutment. The barge was not taken on a hawser, as is sometimes done, but was placed on the starboard side for convenience in landing. With full knowledge of these waters, it was incumbent upon the tug to so navigate as to avoid contact with this abutment, or its extension below the water line. Whatever part of the abutment was struck, it was negligent for the Golden Age to allow the barge to come in contact with it. There is no room for conjecture. The fact appears, if, indeed, it is not admitted, that there was a contact with sufficient force to injure the planks and cause the damage. It was a clear day and good water conditions, and to allow the barge to strike in the manner described,

causing it to sink, was such a breach of the engagement to transport the barge as to constitute negligence, and we have no difficulty in placing the blame upon the tug. We find no liability on the part of the city of New York.

Decree affirmed as to the city of New York, and reversed as to the Newtown Creek Towing Company.