## THE WILLIAM T. ROUSE.

## THE WYOMISSING.

## SARGENT BARGE LINE, Inc., v. READING CO.

### No. A–16027.

District Court, E. D. New York.

Jan. 20, 1941.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for claimant.

BYERS, District Judge.

The libelant's coal barge William T. Rouse, being light, was taken in tow by claimant's steamtug Wyomissing on January 30, 1940, at 74th Street, East River (the I. R. T. coal dock), and was caused to strike the sea-wall thereof at the port bow corner. The libelant asserts, and claimant denies, that the tug's negligent towage caused the damage, to recover for which this cause was instituted on August 27, 1940.

The fact of the striking is not in dispute, but the maneuver which so resulted is the subject of conflicting narratives, which must be briefly discussed. The physical conditions were agreed to, except as to the amount of floating ice in the river; that there was some is not contradicted by the barge's captain.

The time is agreed to have been about 5:15 p. m.; the weather clear and cold, an ebb tide running of about 5 miles, and no effective wind. From bank to bank, the East River is 750 feet wide, while the channel is of 525 feet. Seemingly the depth off the sea-wall is sufficient to accommodate loaded coal barges, but the figures do not appear, and are probably unimportant.

The Wyomissing is 104.6 feet long by 24 feet, with a 12-foot draft, and has engines of 500 horse-power.

The dimensions of the barge were 114 feet by 30 feet, and she had 16-foot sides. She lay stern upriver, light, after discharge, at 74th Street, outside, at her bow corner, of a Sanitation Department scow. There is a dispute as to whether she was parallel to the sea-wall, and outside of another similar vessel as her bargee Bruhns says, or diagonally in the river, with her stern alongside the wall, and her bow in line with the said Sanitation scow. The issue seems to be of little importance, and no finding is deemed necessary; however, her bargee ought to know and, if one is desired, it will be in accord with his version.

The William T. Rouse had to be moved out from astern of the Sanitation scow, and the method whereby that was accomplished is variously recited. The bargee says his vessel was hauled out about three lengths into the stream by a head-line from the tug, which was made fast to the port stern cleat on the barge, so that the two vessels lay across the river, the tug astern; that would put the latter about 450 feet off the sea-wall, depending on the length of the

line, in a 5-mile ebb tide. Then that the line was moved by him, at the order of the master of the tug, to the starboard (upriver) stern cleat, and then to the bow cleat on the same side, so that eventually the tug had the barge alongside to port, and all this consumed five minutes, which included the making fast of a towing strap and a stern line. Then the heading being for New York, the tug sought to swing the tow up river, so as to come around to starboard against the tide, and eventually to head down the stream.

That the striking occurred because the starboard swing could not be made, and that the tug's captain did not realize this soon enough, and went into reverse too late to avoid contact between the port bow corner of the barge and the sea-wall at "about 72nd or 70th Street".

McCormick, the tug's captain, says that he brought the Wyomissing up alongside the Sanitation scow, and ordered the bargee to let go his light line leading to that vessel, and replace it with a head-line from the tug, which was put on a starboard cleat of the barge; then her stern line was let go, and the tug came ahead, edging the barge out-river, lifting her clear of the Sanitation scow, and letting her come down alongside to port of the tug, and then she was properly made fast with head, towing, and stern lines.

The heading of the tow was then up river, speaking generally, and this recital is accepted in preference to that of the captain of the barge, as being more likely than one of an attempted make-up in midstream or thereabouts, athwart a 5-mile ebb tide.

From 150 feet, as estimated, off the sea-wall, the tow proceeded under one bell toward the New York shore, preparatory to making a full turn to starboard against the tide, and so to head down stream.

It does not appear how near the approach was to the sea-wall, when the starboard turn was attempted, but the captain said he thought he was "in far enough * * * to get around" when the wheel was put into hard astarboard.

At that time he says the ice "was all formed between the bow of the tug and the starboard bow of the Rouse", with the result that he could not lift the barge out of the ice, and head her as desired, so that the tow was edging down broadside on an angle toward the New York shore, and that he was down river about 250 feet from the

said Sanitation scow. The tug reversed her engines, to release the ice, but that was not accomplished, and while going full speed astern, the vessels sagged down and the contact with the sea-wall took place, which caused the damage.

That ice was present in the river, is not denied, but the quantity and character are the basis of controversy.

Apart from the witnesses called for each vessel, there is little in the case to inform the court as to the true conditions. The mean temperature for the five days ended January 30 varied from 20° to 29°, thus indicating ice formation, and the official weather reports for these days all refer to the presence of floating ice in the rivers and upper-bay; on the 29th and 30th the words "slightly impeding navigation" appear in connection with the said observed presence of ice.

In a statement procured and dictated by claimant, and signed by the bargee of the Rouse on her arrival at Perth Amboy, the words appear: "ice in East River bad". Bruhns says this statement was read to him before he signed it. Perhaps too much weight should not be attached thereto, considering the collaboration obviously to be attributed to the authorship of this document, but it is consistent with the official weather reports.

The ice was not present in sufficient volume to prevent navigation, as the testimony for both sides shows; nor is it asserted for the libelant that fault is to be attributed to the tug for attempting to move the barge at all. She had been reported light at 74th Street to the claimant, which was notice that she was ready to be towed, and the tug was sent upon the only expectable mission consistent with the message.

It is concluded that the ice did impede the towage operation, and realization of that fact by the bargee may account for the very awkward maneuver attributed by him to the tug in making up the tow, which has been discussed. Resort to that explanation involves placing the tow across the tide, headed directly for the New York shore, about 350 feet distant therefrom, and the failure to make good the turn up river, without striking the sea-wall. Refusal to accept that version means that the libelant's cause is deemed not to have been established.

The libelant cites cases to demonstrate that the claimant necessarily assumed the burden of proving that the striking of the

sea-wall by the barge was not due to presumptive fault of the towing vessel: The Philip J. Kenny, 3 Cir., 60 F.2d 457; The Golden Age, 2 Cir., 6 F.2d 877; The W. G. Mason, 2 Cir., 142 F. 913.

It is thought that such requirement has been met, assuming that it applies; namely, that the ice conditions proved to be of such magnitude that the proper navigation of the tug was overborne by a force which proved to be unmanageable in spite of the exercise of due care and nautical skill which were brought to bear in the effort to accomplish the task in hand.

The case of McLain Line, Inc., v. Premium Coal Co., Inc., 1936 A.M.C. 619, resulted in a decree against a tug which was found to be at fault for not maintaining a lookout to warn the navigator against the approach of a field of ice which caused the damage. No failure to maintain a lookout was alleged or proven, nor was it an element, in this cause.

Libel dismissed with costs. Settle decree.

If itemized and numbered findings are desired, they may be settled with the decree.