## THE ROB.

### THE JOHN D. SCHOONMAKER.

Nos. 355, 356.

Circuit Court of Appeals, Second Circuit.
July 21, 1941.

Foley & Martin, of New York City (James A. Martin and Christopher E. Heckman, both of New York City, of counsel), for appellant W. E. Hedger Transportation Corporation.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for appellant M. & J. Tracy, Inc.

Kirlin, Campbell, Hickox, Keating & McGrann and Robert S. Erskine, all of New York City, for appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This litigation arose out of a collision between the tow of W. E. Hedger Transportation Corporation (for brevity called Hedger) and the tow of Cornell Steamboat Company (for brevity called Cornell) which occurred on June 11, 1939 about 8:25 P. M. (D.S.T.) in the Hudson River near Magdalen Island. The northbound Cornell tow, with a one mile tide under foot, left Kingston in charge of the tug John D. Schoonmaker, with a helper tug Rob. The tow consisted of 12 boats of which 9 were light, with free boards of from 10 to 12 feet. The tow was made up in two ranks, with 7 light boats in the port rank and the other 5 boats in the starboard rank, the last of which was the partially laden barge Phalen. The Schoonmaker had out two 200-foot hawsers and the total length of the tow was about 1000 feet. In the vicinity of Barrytown the helper tug came alongside the Schoonmaker, and put out a hawser to the head tier. The tugs then crossed over to the westerly side of the river. When just below Saddle Bags they sighted the Southbound Hedger tow about two miles away, off Tivoli. This tow consisted of 5 loaded barges in tandem formation on a bridle hawser of about 300 feet, and was coming down on the easterly side of the channel. The tows were in position to pass starboard to starboard with a clearance of about 900 feet. While they

continued to approach, storm clouds appeared in the west and when the towing vessels were nearly abreast a sudden squall, which accompanied a thunder storm, broke and swept the tail of the Cornell tow clear across the river; in consequence its starboard tail barge collided with the head barge of the Hedger tow. The channel was more than 1000 feet in width; the Hedger tow was hugging the easterly shore to within 100 or 150 feet; clearance of the barges failed by only 25 to 35 feet. At the moment of impact the Hedger tug had dropped her hawsers in the water and the Phalen rode over them. After the impact both tows continued on; and the Cornell tugs did not learn that there had been a collision until the Phalen was landed at Saugerties. For the damages resulting to its tow Hedger, owning both the barges and the tug Top Sergeant, sued Cornell in personam and the Cornell tugs in rem, and M. & J. Tracy, Inc., as owner of the injured boat in the Cornell tow, sued the three tugs. The district court found that the collision resulted from an inevitable accident and dismissed the libels.

■ In the Tracy appeal there is a half-hearted attempt to charge the Hedger tug with fault for continuing ahead after it was seen that the easterly tailing of the Cornell tow was increasing, but the finding of the trial judge in favor of the Top Sergeant's navigation is well supported by the evidence.

■ The case is less simple as to the Cornell tugs. As the collision resulted from their inability to control their tow, they must be held liable unless their owner has affirmatively shown that the sagging of the barge Phalen across the course of the Hedger tow could not have been prevented by the use of that degree of reasonable care and attention which the situation demanded; and "the burden of this defense is heavily upon him who asserts it." The Anna C. Minch, 2 Cir., 271 F. 192, 195; Cranberry Creek Coal Co. v. Red Star Towing & Transp. Co., 2 Cir., 33 F.2d 272, 274; The Patrick A. Dee, 2 Cir., 50 F.2d 393, 394; The Philip J. Kenny, 3 Cir., 60 F.2d 457, 458; The Charles H. Sells, 2 Cir., 89 F.2d 631, 633. This storm was not catastrophic; the wind velocity was not found to have exceeded 40 miles per hour. It is common knowledge that winds of that velocity are not unusual and that a proper tow should not be rendered helpless by encountering a 40 mile gale. If it is, the towing vessels either lack sufficient power, or do not properly apply their power, or the wind comes up so suddenly that they can not do so. Admittedly, one of the purposes of having a helper tug is to prevent the tow from sagging out of line. It seems obvious that if the Rob had been at the tail of the tow when the storm broke, the sagging of the Phalen could have been sufficiently checked to provide the few feet necessary for clearance with the Hedger tow. No evidence was offered to the contrary. Cornell sought to excuse the failure to use this method of preventing the accident by testimony that the squall broke suddenly and that "from the time the storm picked up" the Rob "did not have time to get on the tail of the tow and do any good." Captain Gibbons of the Schoonmaker so testified, but it is evident from his next answer that he considered that "the storm picked up" when the wind began to blow and it started to rain. It may be that after the storm broke Captain Gibbons used good judgment in keeping the Rob at the head of the tow to help pull it faster, but we are not convinced that precautions should not have been taken earlier. The storm did not come without warning. Captain Gibbons admitted watching the storm clouds gather in the west for 15 or 20 minutes, but says he "didn't know how the wind was going to blow." But he did know that thunder storms are frequently accompanied by wind of considerable velocity and that his long tow of light barges was highly susceptible to wind pressure. He gambled on the wind not attaining sufficient force to blow his tow clear across the river, if both tugs continued to pull at the head. It seems to us that reasonable care, when the storm was seen to be gathering, required such arrangements to be made as would enable the helper tug to be of some assistance in preventing the tow from sagging 900 feet to the east. In Cranberry Creek Coal Co. v. Red Star Towing & Transp. Co., 2 Cir., 33 F.2d 272, 274, we said that the vessel owner must not only disclose "what happened, but what was done to avoid, and what would have been necessary to prevent it." We think that Cornell failed to show that the collision could not have been prevented, if reasonable precautions had been taken when the storm clouds first appeared.

■ The appellee urges that the master and the pilot of the Top Sergeant made no

criticism of the navigation of the Cornell tugs, and the pilot expressed the view that it would have been worse if the helper had gone to the tail of the tow to straighten it out. But he was apparently speaking of sending her back after the storm broke and the tow was already tailing far over. No witness was asked whether the helper should not have been so placed that she could have been sent back earlier. If a towing company insists on hauling a thousand foot tow of light barges in a section of the river where thunder squalls are usual, we think it should bear the risk of failure to supply tugs of such power and so located as to keep some reasonable measure of control of its tow in the face of a wind of only 40 miles velocity. In our opinion Cornell did not establish that the storm was of so unusual a character that a case of inevitable accident was made out. Cf. The Mary T. Tracy, 2 Cir., 8 F.2d 591, where the wind velocity reached 65 miles per hour. The decrees are reversed and the causes remanded for entry of interlocutory decrees in favor of the libellants.