## SARGENT BARGE LINE, Inc., v. THE WYOMISSING.

### THE WILLIAM T. ROUSE.

#### No. 231.

Circuit Court of Appeals, Second Circuit.

April 13, 1942.

Frank C. Mason, of New York City (Mahar & Mason, of New York City, on the brief), for libelant-appellant.

Paul Speer, of New York City (Macklin, Brown, Lenahan & Speer, of New York City, on the brief), for claimant-appellee.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

In The Rob, 2 Cir., 122 F.2d 312, 313, we reversed a ruling that a summer squall along the Hudson was an inevitable accident excusing a collision of vessels in that river. Judge Swan for the Court quoted from several earlier cases to the effect that "the burden of this defense is heavily upon him who asserts it." We have here a comparable situation, except that it is the ice of winter which the trial court has held to be the cause of the accident in issue. As before, we believe that the cause of the accident was more negligent navigation than inevitable accident or act of God, and that the heavy burden assumed by the navigator to sustain his defense has not been met.

On the afternoon of January 30, 1940, libelant notified the tug Wyomissing to pick up its coal barge William T. Rouse, then light, at the dock in East River off 74th Street, Manhattan. The tug proceeded to do so; and in the course of the consequent maneuvers, the barge came in contact with the sea wall at about 69th Street,

with resulting injuries for which damages are claimed herein. From the story of the tug captain, accepted by the district court, The William T. Rouse, 37 F.Supp. 88, at page 89, and by us, it appears that on an ebb tide the tug came up to the Rouse, then anchored stern upstream alongside another barge tied to the dock, with a city Sanitation scow below and off the bow of the Rouse; that the tug attached a line to the bow of the Rouse and pulled it out, so that it was turned to starboard, bringing its bow upstream and alongside the tug, then 150 feet off shore; and that, after the two vessels had been made fast to each other, the tug started toward the New York shore under a slow bell, so as to get far enough out of the channel to complete a full turn to starboard and head down the river. The tug failed, however, to make the swing because, as the captain testified, ice "was all formed" between his bow and the bow of the barge, making it impossible for him to turn as he had planned. As the vessels drifted down toward the sea wall, he eventually reversed his engines in an endeavor to free the boats from the ice, but too late, as collision with the sea wall occurred while he was going full speed astern.

The testimony of the barge captain, which the district court rejected, differed in that he made the barge turn in the opposite direction—accomplished by a head line from the tug, first made fast to the port stern cleat of the barge, then shifted to the starboard stern cleat, and finally to the starboard bow cleat—thus placing the vessels some 350 to 450 feet out from the sea wall before they were made fast to each other. On either version, however, we have the same general problem of a turning maneuver by the tug captain which resulted in his piling his tow up against the sea wall five blocks downstream.

■ The mean temperature had been 22° and 20° for January 26 and 27, rising to 26° and 29° on January 29 and 30, or sufficiently cold to indicate ice formation; and floating ice had been observed in the rivers and upper bay. The official weather reports for both January 29 and January 30 referred to floating ice, "slightly impeding navigation." Ice of this character, however, was not enough to prevent navigation, which, as the testimony showed, was proceeding as usual. Indeed, any other course would tie up the navigation in this busy port for a considerable part of the year.

The Hercules, 2 Cir., 213 F. 615, 617. Ice here and at this season can hardly be considered an act of God or inevitable accident. Conners Marine Co. v. Besson & Co., 2 Cir., 94 F.2d 572; The R. G. Townsend, 2 Cir., 278 F. 726. Both parties expected navigation to proceed, and it is clear that the cold weather and the ice can be considered only conditions of navigation to be expected at the time.

■ We think, as in the cases last cited, that having regard to these conditions the tug captain showed—or at least did not negate—inept navigation under the circumstances. His testimony indicates his slowness of appreciation of the ice formation between the tug and the barge or of its natural effect upon his navigation. He was going ahead slowly on one bell; that his 500-horsepower tug could not make the swing would appear to be because he was not calling upon the power at his command. He seems to have been headed too much towards the New York shore, rather than upstream, for after the accident he did pull away from the wall and make the swing without difficulty, because, as his deck hand testified, he was in better shape to do so. True, at that time he had freed himself from the ice; but that suggests a final question, namely as to his delay in going full speed astern to shake off the ice. The whole maneuver points to slow and inattentive perception of not overwhelming dangers. If this must be excused on the ground of the presence of ice, we think this would put cold weather navigation in New York Harbor pretty much at the risk of the tow, notwithstanding careless navigation by the tug.

Nor do the cases cited by appellee militate against our conclusion, or that of the cases cited by us above. In The Edwin Terry, 2 Cir., 162 F. 309, the damage was found due to the structural weakness of the barge alone. In The Hercules, supra, and The Bulley, 2 Cir., 266 F. 31, it was held not negligent merely to navigate in this vicinity in the presence of ice. In the former case, floating ice struck and injured the tow while the tug was seeking to avoid an ice field which was coming down the Hudson; in the latter, tug and tow were forced on the rocks at Man-of-War reef by an unusual ice field encountered at night and driven with force by the flood tide. More nearly analogous is The R. G. Townsend, supra, 278 F. at page 728, where the court said that a scow

owner, though assuming all risks of damage produced by the ice itself by consenting to the tow under the conditions, did not assume risks of collisions due to insufficient power of the tug. The tug "went out into the heavy ice, and then found itself unable to change the direction of her tow, and was carried by the ebb tide into collision with the steamship. The owner of the scow did not assume the risk of such navigation. It was not implied in the contract of towing. The collision was due to faulty navigation and a breach of the employment for towing."

Reversed and remanded for the entry of an interlocutory decree in favor of libelant.