**KIERNAN v. LAKE CHAMPLAIN TRANSP. CO. (two cases). FORSYTH v. SAME (two cases). COSTELLO v. SAME.**

(Circuit Court of Appeals, Second Circuit. May 11, 1921.)

Nos. 217-221.

1. **Towage ⬅15(2)—Where proper care would ordinarily prevent injury to tow, tug has burden of proof.**

If, without fault on the part of the tow, a misfortune occurs under circumstances in which, if proper care is exercised in performing a similar service, such misfortune does not ordinarily occur, it is sufficient to impose on the tug the burden of proving that due care was exercised.

2. **Towage ⬅11(7)—Tug liable for tow striking bridge piers.**

A tug which undertook to pass through a bridge draw at night, when there was a variable and gusty wind, with a tow of 18 boats, 900 to 1,000

feet long, and the last half of the tow light, *held* liable for injury to some of the rear boats by striking the bridge piers.

3. **Towage** ⊕⟹11(7)—**Tug liable for tow striking pier.**

A tug with a long tow of boats, many of them light, which in passing through a channel 700 feet wide between breakwater and piers, in squally weather, kept close to the ends of the piers for its own convenience, *held* liable for injury to one of the boats by striking a pier.

Appeals from the District Court of the United States for the Southern District of New York.

Suits in admiralty by John Kiernan against the Lake Champlain Transportation Company. From the decree, both parties appeal. Affirmed.

Suits by Ellen A. Forsyth, by John Forsyth, and by Thomas Costello against the same respondent, in which libelants appeal. Affirmed in part, and reversed in part.

All the libelants are owners of boats of the kind used in navigating the canalized waters of the upper Hudson, Lake Champlain, and the Richelieu river; all complain of injuries received while in tow of tugs owned by the respondent; and all the injured boats were of the usual canal boat size—i. e., about 17½ feet beam and 96 to 98 feet long.

The matters to be considered may conveniently be described as accidents occurring at (1) Ticonderoga; (2) Burlington; (3) Mechanicville; (4) La Colle. In respect of the Ticonderoga, Burlington, and La Colle accidents, the lower court dismissed the libels, and gave to libelants half damages for injuries received at Mechanicville, whereupon libelants appealed.

Foley & Martin, of New York City (James A. Martin and George V. A. McCloskey, both of New York City, of counsel), for libelants.

O. A. Dennis, of Whitehall, for respondent.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The claim arising at Ticonderoga is as follows: The boats Burchard, Baudet, and Kitty Forsyth were in midsummer weather taken in tow by respondent's tug at Whitehall, N. Y., bound for St. Johns, Canada. The channel for most of the distance from Whitehall to Ticonderoga is narrow and tortuous, but on reaching Montcalm, something less than two miles from Ticonderoga Bridge, the channel of 12 feet or upward is 800 yards wide, and at this point there is a landing. The Ticonderoga railroad bridge has a draw with an opening of 300 feet, and through this the tow containing the boats enumerated was required to pass shortly before midnight.

This tow contained 18 boats in 9 tiers; 7 were loaded and 11 light; the latter were astern. The Burchard, Baudet, and Kitty Forsyth were the starboard boats in the last three tiers. There is evidence that on nearing Montcalm the weather was such that the tug master considered the propriety of stopping at that landing. The wind had been blowing hard from the west, but somewhat to the southward of Montcalm the wind changed to the eastward of south, and then blew against the starboard side of the tow as it approached Ticonderoga draw. He therefore concluded to go ahead. After the tug got into

the draw it is said that the wind suddenly shifted to the westward and blew with such force as to drive the three boats enumerated against the spring piles or their timbering marking the east side of the draw.

The length of this tow from the stern of the tug to that of the aftermost boat was at least 900 and probably more than 1,000 feet. It is well known that light boats respond to the action of the wind far more quickly than do loaded ones; therefore, the tail of this tow was peculiarly liable to be driven by sudden gusts, which, according to all the testimony, are to be expected in such a region as the lower end of Lake Champlain, consisting of narrow waters hemmed in by high hills intersected by narrow valleys, through which the wind blows as through a funnel.

There was no helper tug, and such tugs are not said to be customary on Lake Champlain. Indeed, there were but two tugs on the whole lake during the season when this accident occurred. But it was perfectly possible to divide the tow and take it through in parts, if danger was to be anticipated. The evidence, however, makes plain the fact that the tug master expected that the wind would hold from the southeast, or thereabouts, long enough for him to get through the draw; wherefore he deliberately took a tow less than 40 feet wide through a 300-foot draw close to the eastern side. Consequently, when a gust of wind accompanied by heavy rain struck the tow from the westward, this accident happened.

[1] We cannot agree with the lower court that such navigation exhibits that degree of care which those in tow are entitled to receive from their tug. As we said in The Mason, 142 Fed. 913, 74 C. C. A. 83, if without fault on the part of the tow a misfortune occurs under circumstances in which, if proper care is exercised in performing a similar service, such misfortune does not ordinarily occur, it suffices to impose upon the tug the burden of proving that due care was exercised.

[2] This burden has not been borne, for, laying aside the use of helper tugs, it was known that the change of wind that did occur was probable, and it was certain that when it occurred the tow would be on the east side of the draw and would be thrown against the spring piling. Libelants are entitled to recover in respect of the damage at the Ticonderoga bridge.

[3] Upon the same voyage that we have been considering the same tug and tow arrived at Burlington, Vt., where it intended to pick up and add to the tow some other boats. The tug, therefore, passed through Burlington harbor, an artificial refuge formed by a breakwater some 700 or 800 feet from the Vermont shore.

We find that, for the purpose of conveniently picking up these boats, the tug passed close to the pier line, and while so doing a westerly squall struck the tow and swept the Baudet against a pierhead, doing further damage. We think the evidence clear that the weather on entering Burlington harbor was and had been such as to render squalls of exactly the kind causing this injury likely to arise, and can therefore see no excuse for scraping along the Burlington piers for the tug's

own convenience, instead of choosing the middle of what is practically a passage at least 700 feet wide, for the intention was to enter from the south end of the harbor and pass out to the north.

For these reasons we cannot agree with the disposition of the lower court of this claim, and hold the Baudet entitled to recover for the Burlington damage.

The Mechanicville episode is as follows: The boat Burchard had just passed through a lock of the Champlain Barge Canal at or near Mechanicville. She was in tow of respondent's steam tug, and was to pass through or under the westerly span of the railroad bridge below the lock. Substantially in line with the lock is the dam of the Hudson river, over which water was flowing, and on the bank of the river are mills discharging the spent water from their wheels into the river. Consequently the surface of the river is troubled with cross-currents, and it is peculiarly necessary for navigators to pay attention to their steering.

The lower court found that in this rather troublesome situation the the barge master did not attempt to steer, and the tug permitted her line to fall slack. Therefore he awarded but half damages, and we are not disposed to disturb this result.

The La Colle injury is this: The boat Gold Dust on a warm July afternoon was the port boat in the tenth tier of a tow of 32 boats, made up in 16 tiers, all bound north down the Richelieu river in tow of one of respondent's tugs. The Gold Dust struck the center pier of the railroad bridge at La Colle when passing through a draw 90 feet wide. The cause of injury, as alleged by respondent, was a sudden gust of wind accompanied by rain.

We think the evidence discloses that there was something of a wind, and it was sudden, but do not believe that it amounted to a storm, or was sufficient to injure a boat in good condition. The evidence satisfies us that the Gold Dust on some previous occasion had her side stove in, that it had been insufficiently, and indeed improperly, repaired, and she hit, or rather rubbed, against the abutment of the bridge in a manner which should not have injured any boat in good condition. The more the wind is minimized (and libelant's witnesses almost cause it to vanish), the more obvious is this explanation of injury. For these reasons we agree, in respect of the La Colle damage, with the result reached below.

As these cases were substantially tried, appealed, and argued before us together, the results are such that there will be no costs in this court, other than the disbursements attendant upon preparing and printing the record in respect of the Ticonderoga and Burlington injuries. These disbursements libelants will recover. The causes are severally remanded, with directions to proceed in accordance with the views hereinabove expressed.