## CHARENTE S. S. CO. v. UNITED STATES.

(Circuit Court of Appeals. Fifth Circuit. March 6, 1926.)

No. 4608.

**1. Wharves ⬡⟹22—Steamship held liable for injury to wharf.**

An in-coming steamship, which, instead of anchoring in the channel at a safe distance, came within 200 to 400 feet of the wharf at the New Orleans quarantine station to wait for inspection, holding herself against the current by her engines, and which drifted or was driven by the wind against the wharf and injured the same, *held* negligent, and not relieved from liability on the ground of inevitable accident.

**2. Wharves ⬡⟹22.**

That the ship followed a usual, but negligent, custom is no defense in action for injury to wharf.

**3. Wharves ⬡⟹22.**

The doctrine of inevitable accident has no application where there is a lack of a proper exercise of nautical skill.

**4. Wharves ⬡⟹22—Employment of compulsory pilot does not relieve master of duty to exercise supervision of ship or consequences of negligence injuring a wharf.**

That a ship, which stopped within dangerous proximity to a quarantine station wharf, and which drifted against and injured the same was in charge of a compulsory pilot, does not relieve her from liability where it was with acquiescence of the master, whose authority remained paramount.

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action at law by the United States against the Charente Steamship Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George H. Terriberry and Jos. M. Rault, both of New Orleans, La., for plaintiff in error.

Wayne G. Borah, U. S. Atty., and Edmond E. Talbot, Asst. U. S. Atty., both of New Orleans, La.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

BRYAN, Circuit Judge. The steamship Chancellor collided with a government wharf at the quarantine station near the mouth of the Mississippi river. It is agreed that the wharf was damaged to the extent of $1,700, and, in an action at law, the United States recovered judgment for that amount against the owner of the ship.

Liability of defendant was denied by the answer on two grounds: First, that the damage was caused by a sudden gust of wind, and therefore was the result of an inevitable accident; and, secondly, that the ship, at the time it collided with the wharf, was in charge of a compulsory pilot, for whose conduct defendant was not responsible. The refusal of the trial court to sustain one or the other of these grounds of defense is assigned as error.

[1] The steamship Chancellor, bound from a foreign port to New Orleans, entered the Mississippi river and stopped for inspection 200 to 400 feet off the quarantine station, slightly down stream from the wharf. She did not anchor, but was held against the current by an occasional "kick" of her engine ahead for about 10 minutes when she was boarded by the quarantine officials. Her master then left her in charge of a compulsory pilot and went into the saloon to sign the necessary health and quarantine papers. While he was there, and within about 10 minutes more, the ship collided with the wharf and caused the damage complained of. The pilot testified that a sudden gust of wind struck the ship without warning and rendered it impossible to avoid the collision, and in this he was corroborated by the master, who estimated the gust of wind at 30 miles an hour. The attention of the other witnesses does not seem to have been attracted by any sudden increase in the velocity of the wind, which theretofore had been light and variable.

The Chancellor was 400 feet long, only partially loaded, her draft being 17 feet 7 inches aft, and 11 feet 1 inch forward, which left 15 feet of freeboard. Her master had

been going to New Orleans for 23 years, and was thoroughly familiar with the fact that there was ample depth of water in front of the quarantine station in which he could anchor his vessel, but stated that the usual custom was followed of "hanging off" the wharf while waiting for inspection. He admitted that it was dangerous to anchor where the Chancellor was stopped, but the way she was handled seems to have met with his approval, as he does not claim to have made any protest or objection to the pilot.

[2, 3] The evidence falls far short of sustaining the defense of inevitable accident. The collision would not have occurred if the ship had been kept out in the channel where she would have had room to maneuver. It was an act of negligence to permit her to remain so close to the wharf as to render it dangerous to anchor in case of necessity, such as would arise from a sudden failure of the steering gear to work, a breakdown of the engines, a momentary steering against the tide at even a slight angle instead of in a true direct line, the passage of another vessel, or an increase in the velocity of the wind, as it is claimed actually occurred. If anything unusual happened, the ship was bound to be placed in immediate peril of damage either to herself or to the wharf. The doctrine of inevitable accident has no application where there is a lack of a proper display of nautical skill. The Mabey, 14 Wall. 204, 20 L. Ed. 881. There was an unnecessary taking of chances, with the approval or acquiescence of the master. It is immaterial that the usual custom at the quarantine station was followed. A negligent custom is no defense. T. & P. Ry. Co. v. Behymer, 23 S. Ct. 622, 189 U. S. 468, 47 L. Ed. 905.

[4] The responsibility for the safety of the ship rests upon the master. The pilot, because of his superior knowledge of the depth of water and location of the channel, has charge of the navigation of the vessel, but even then the master is not absolved from his duties, but may advise the pilot, and even displace him in case of manifest incompetency. The China, 7 Wall. 53, 19 L. Ed. 67; The Oregon, 15 S. Ct. 804, 158 U. S. 186, 39 L. Ed. 943; Camp v. Marcellus, Fed. Cas. No. 2,347; Jure v. United Fruit Co., 6 F. (2d) 6; La Boyteaux' Rules of the Road at Sea, 240. We recognize the rule contended for by defendant that the master ought not to substitute his judgment for that of the pilot except in cases of obvious danger, or as expressed in the Jure Case, where danger is apparent and avoidable. But we think a proper case for the master's asser-

tion of authority for the safety of his ship presents itself where it is obvious or apparent that danger from some cause is imminent, though the particuar cause of danger may not be appreciated. In our opinion it was unnecessary that danger from a sudden gust of wind must have been contemplated, but it was sufficient that the danger of the situation from any one of a number of probable causes was reasonably apparent, to make it the duty of the master to insist upon the adoption of a method that was safe and ready at hand.

The judgment is affirmed.