## THE PHILIP J. KENNY.

## THE TRIPOLI.

## NEW YORK TOWING & TRANSPORTATION CO. v. FORD MOTOR CO. et al.

## THE WALTER FRANKS.

## FORD MOTOR CO. et al. v. NEW YORK TOWING & TRANSPORTATION CO. et al.

## Nos. 4703, 4688.

Circuit Court of Appeals, Third Circuit.
July 25, 1932.

See, also (D. C.), 57 F.(2d) 337.

Single & Single, of New York City (Thos. H. Middleton, of New York City, of counsel), for New York Towing & Transportation Co.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (J. Harvey Turnure and Harry D. Thirkield, both of New York City, of counsel), for Ford Motor Co.

Wm. J. Mahar, of New York City, for the Walter Franks.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

PER CURIAM.

These consolidated appeals arise out of two decrees in admiralty by the District Court of New Jersey awarding the libelants, the Ford Motor Company and Chiarello Brothers Company, Inc., recovery against the steam tug Philip J. Kenny and her owner, the New York Towing & Transportation Company, and dismissing the libels against the steam lighter Walter Franks. The Ford Motor Company and Chiarello Brothers Company, Inc., appeal from the decrees only in so far as they exempt the Walter Franks from liability. The New York Towing & Transportation Company appeals from the decrees against it and the Philip J. Kenny.

The facts leading up to the collision and resulting in loss of the cargo of automobile bodies, owned by the Ford Motor Company, and damage to the lighter Tripoli, owned by Chiarello Brothers Company, Inc., have been found and discussed most satisfactorily in the memorandum opinions of the court below. We need add but little to the conclusions reached by the learned trial judge other than to indicate that they are amply supported by authorities of this and other circuits.

Since there is no dispute as to the fact that the libelants were without fault, the burden was upon the tug Philip J. Kenny and its owners to prove that it exercised due care, and in this it has failed. In Kiernan v. Lake Champlain Transp. Co., 273 F. 499, 501 (C. C. A. 2), a tug with eighteen boats in tow, while passing through the Ticonderoga Railroad Bridge, allowed the tail end of the tow to come in collision with the bridge. It was contended that, as the tug entered the draw, the wind suddenly shifted to the westward and blew with such force as to drive the boats into collision with the draw. The

458

District Court exonerated the tug, but the Circuit Court of Appeals, in reversing the decision of the District Court, said with respect to the point now under discussion: "We cannot agree with the lower court that such navigation exhibits that degree of care which those in tow are entitled to receive from their tug. As we said in The Mason, 142 F. 913, 74 C. C. A. 83, if without fault on the part of the tow a misfortune occurs under circumstances in which, if proper care is exercised in performing a similar service, such misfortune does not ordinarily occur, it suffices to impose upon the tug the burden of proving that due care was exercised."

In The Allegheny, 252 F. 6, 8 (C. C. A. 3), where the tug Emily Marie allowed her tow to come in collision with a bridge spanning the Delaware river, this court said:

"Under such facts—a broad, open roadway; the lashings of the tow secure; the wind and water conditions favorable—it is clear that the passage through the span of the bridge in safety was one that should have been made, and the sinking of the two lighters, without any concurring fault on their part, against the pier, was so incompatible with the safe passage to be expected under such conditions that the burden rested upon the tug to exculpate herself from presumed fault. In The Steamer Webb, 81 U. S. (14 Wall.) 414, 20 L. Ed. 774, it was said: 'There may be cases in which the result is a safe criterion by which to judge of the character of the act which has caused it.' And we think this is a case of that kind.

"This collision could not have occurred without the fault of some one, and, the lighters being without fault, it follows the fault is presumptively that of the tug, which was in exclusive control, unless she has shown the collision was the result of inevitable accident, or was caused by some agency other than the tug or tow. The W. G. Mason, 142 F. 913, 74 C. C. A. 83, and cases there cited."

The District Court found against the defense of inevitable accident. We are in entire accord with its conclusion. The term "inevitable accident" was defined by the Supreme Court in Union Steamship Company v. New York & Virginia Steamship Company, 65 U. S. (24 How.) 307, 313, 16 L. Ed. 699: "Inevitable accident, as applied to cases of this description, must be understood to mean 'a collision which occurs when both parties have endeavored, by every means in their power, with due care and caution, and a proper display of nautical skill, to prevent the occurrence of the accident. The Locklibo,

3 W. Rob., 318. The John Fraser, 21 How. 184 [16 L. Ed. 106]. It is not inevitable accident, as was well remarked by the learned judge in the case of The Juliet Erskine, 6 Notes of Cases, 634, where a master proceeds carelessly on his voyage, and afterwards circumstances arise, when it is too late for him to do what is fit and proper to be done.' He must show that he acted seasonably, and that he 'did everything which an experienced mariner could do, adopting ordinary caution,' and that the collision ensued in spite of such exertions."

It is thus obvious that, in order to sustain the defense of inevitable accident, the respondents had the burden of supporting not only their pleaded defense that the general cause of the collision was a gust of wind, but also that the gust of wind was of such unusual force as was not to be expected under the prevailing weather conditions, and that there was not any intervening act of negligence on the part of the towing vessel. The evidence falls far short of sustaining this burden of proof.

We find no error in the decrees of the court below.

Decrees affirmed.