## THE ALLENTOWN.

## THE MARY T. TRACY.

### Nos. 14537, 14541, 14542.

District Court, E. D. New York.

Aug. 5, 1935.

Purdy & Purdy, of New York City (Frank C. Mason, of New York City, of counsel), for libelants.

Lynch & Hagen, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for the Allentown (property damage).

John J. McElhinny, of New York City, for the Allentown (personal injuries).

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan, of New York City, of counsel), for the Mary T. Tracy.

INCH, District Judge.

About half past 2 in the afternoon of February 16, 1935, the tug Allentown ran into the starboard side of the barge Nimrod, which was being towed, bow first, alongside of the tug Mary T. Tracy, made fast on the starboard side of the tug. This collision occurred in the North River at the time when the tide was strong ebb; slight wind northwest; visibility good.

The result of the collision was that the barge Nimrod was cut in two so that her forward end sank almost at once. The remainder of the barge remained afloat a short while, due to the parting of the lines, and then sank but a short distance away.

From this accident three suits have arisen. Two of them by the master of the barge · and his wife, who were on the barge at the time of the collision, the latter claiming to have been severely injured by reason thereof, the former claiming to have been injured by the loss of his wife's services, and both having lost all their effects as they lived upon the barge.

The third suit is by the owner of the barge which was seaworthy prior to the collision, and, so far as I can see, in no way to blame for the occurrence.

These three suits, by due stipulation, were tried together and one decision will suffice.

It is plain that the libelants are entitled to recover. The controversy is, as to which of the tugs was responsible or whether a decree should run against both.

A brief statement of the facts leading up to and surrounding this accident is as follows:

The tug Tracy shortly before the collision had left Pier 1, North River (New York side), bound for Pier 18 of the Central Railroad of New Jersey (Jersey side). At that time she had alongside her starboard side the coal barge Nimrod, lightly loaded. The bargee, Ira Dover, and his wife, Mary, lived on this barge and were aboard at the time.

The tug Tracy is 98 feet long, 27 feet wide, and drew about 15 feet. The barge Nimrod was 116 feet long, and was strapped to the starboard side of the tug, bow first. She had on board about 325 tons of soft coal.

There was no difficulty about either tug seeing the other. As the tide was strong ebb in the river, the master of the Tracy, as she proceeded across, held up against the tide and was about headed for Pier 6, Jersey City. He observed the tug Allentown, about 1,500 feet away, heading for the New York shore.

The Allentown was traveling light and is one of the large tugs operating in

the river. She had a balanced rudder, operated by steam. At the time when the master of the Tracy first saw the Allentown, the latter was about 200 feet off the Jersey shore approaching on a parallel course. If this course had been kept, the two vessels would have passed about 200 feet apart starboard to starboard.

Accordingly, the master of the Tracy blew a two-whistle signal, but this was followed by an alarm when he observed that the Allentown had changed her course and might possibly collide with the Tracy. The master of the Tracy also endeavored to avoid such a collision by starboarding his wheel and, just before the collision, he hard aported his wheel in an effort to swing the stern of his barge so that it might escape the collision. However, this maneuver was unsuccessful, and the Allentown struck the barge at about a 45 degree angle, about 30 feet from her stern, with the result that the barge was cut in two.

I locate the place of the accident as approximately where the witnesses for the Tracy say it occurred. This would make the collision take place about 800 feet off the Jersey shore.

█ Under the circumstances, the Allentown is under the burden of explanation for running into this barge.

█ There was evidence offered here of negligence and lack of nautical skill. Where this is so, the burden of explanation based on inevitable accident is heavy. The Philip J. Kenny (C. C. A.) 60 F.(2d) 457; In re Red Star Towing & Transportation Co. (C. C. A.) 30 F.(2d) 454, certiorari denied 279 U. S. 844, 49 S. Ct. 265, 73 L. Ed. 989; Charente S. S. Co. v. U. S. (C. C. A.) 12 F.(2d) 412.

█ There was nothing unusual about the course taken by the tug Tracy with her barge, she was burdened with her tow; while the Allentown was light and to some degree at least running with the strong ebb tide. It is possible that heading, as she was, for New York, one of the witnesses saying that she was headed approximately for Governors Island, her master thought he might cut across in front of the slower Tracy with her barge. However, it is unnecessary to thus speculate for the reason that the explanation of the Allentown is insufficient.

The excuses given by the Allentown for the collision are more or less speculative. Apparently it is contended that she was not on any course but simply coming around, yet she was at least 500 feet out from the Jersey pier, and I find that she was approximately 800 feet. The further contention is that her rudder was not working properly, due to some obstacle, possibly in the shape of a small piece of wood, which must have jammed her rudder so that the rudder failed to respond, and finally that the angle of contact was 90 degrees, and not 45, as the latter angle would not have caused the stem of the Allentown to cut into the barge.

The problematical jamming of the rudder by some foreign substance is, in this case, pure conjecture. In re Reichert Towing Line (C. C. A.) 251 F. 214, certiorari denied 248 U. S. 565, 39 S. Ct. 9, 63 L. Ed. 424.

I fail to find any evidence that the masters of the two tugs did not see each other in ample time, and the contention of the Allentown that the collision was due to a lack of lookout on the Tracy is unsubstantial. Also its claim that the Starboard Hand Rule (article 19 of the Inland Rules [33 USCA § 204]) applies is not sustained by the facts. The whole situation was very plain, and there was no reason for the Tracy to so closely watch the Allentown when she first left Pier 5, Jersey shore, where she had been lying. The Washington (C. C. A.) 241 F. 952.

Cases such as The Port Newark (The Akron), 60 F.(2d) 549 (D. C.), and The Bulley (C. C. A.) 4 F.(2d) 1004, depended on facts other than appear in these suits.

So far as the Tracy meeting the duty resting on her to avoid, if possible, the collision, I fail to find anything omitted or done by her master that was careless or showed lack of nautical skill. Her signal was proper when given, and when the collision seemed imminent, due to the negligence of the master of the Allentown, she promptly blew the alarm and executed the only maneuver that might even then avoid the collision. She was almost successful at that.

Accordingly, libelants are entitled to a decree against the tug Allentown. The tug Tracy is exonerated.

If this opinion is not considered a sufficient compliance with the rule 46½ of the Rules in Admiralty (28 USCA following section 723), findings of fact and conclusions of law in accordance herewith may be submitted.

Submit decree in the usual form referring the question of the amount of damage.