# United States Court of Appeals
## For the First Circuit

No. 00-2415

TISBURY TOWING & TRANSPORTATION CO., INC.,
F/K/A PACKER MARINE, INC.

Plaintiff, Appellant,

v.

TUG VENUS AND TUCKER-ROY MARINE TOWING & SALVAGE, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Lynch, Circuit Judge.

David J. Farrell, Jr., with whom Connors & Farrell was on
brief, for appellant.
Norman A. Peloquin, II, with whom Flanagan & Hunter, P.C. was
on brief, for appellees.

**PER CURIAM.**  Packer Marine, Inc.[1] sues the defendants -- the tug VENUS and its owner, Tucker-Roy Marine -- for negligently grounding its barge, the ALGOL 500.  The case received a bench trial, resulting in judgment for the defendants.  The trial court found that Packer had not met its burden of proving when the grounding incident in question occurred and therefore could not show that the VENUS had ever grounded while towing the ALGOL 500.  Packer appeals, arguing that the district court clearly erred in finding that Packer had not adequately established the date of the grounding, and that in any event, the burdens of production and proof as to when the grounding occurred should have been shifted to the defense.  Upon a careful review of the record in this factually close case, we affirm the judgment of the district court.

The essential facts of the case are as follows:  Packer discovered damage to the ALGOL 500 in March 1995, and after some investigation it came to suspect Tucker-Roy.  This suit followed. Before trial, Tucker-Roy admitted, via stipulation, that the VENUS ran aground at Woods Hole, Massachusetts, while pushing one of Packer's

---

[1]     We refer to the plaintiff using the name under which it was doing business at the time of the events at issue.

barges on some evening between June 1 and June 20, 1994; but Tucker-Roy denied that the barge involved was damaged, and it professed agnosticism as to whether the barge involved was the ALGOL 500, as opposed to one of Packer's other two deck barges. At trial, Packer proffered considerable circumstantial evidence that the grounding occurred specifically on the evening of June 15.[2] That date is significant, because only the ALGOL 500 was available for towing on the evening of June 15; Packer's other two barges were moored in New Bedford harbor at the time. In short, a conclusion that the date of the grounding was June 15 would imply that the VENUS ran aground while hauling the ALGOL 500.

The trial court, however, found that conclusion problematic for the following reasons. Both parties agreed that the grounding occurred while the VENUS was headed westbound from Martha's Vineyard to

_____

[2]     Briefly, Packer's circumstantial evidence of the date of the grounding was as follows. First, Packer sought to rule out all other dates between June 1 and June 20 by reference to extant records: invoices show Tucker-Roy towing Packer's barges only from June 1 to June 4 and June 14 to June 16; on all of these dates except for June 14 and June 15, the names of the crew recorded in the VENUS log do not match the crew that the parties stipulate was aboard the VENUS at the time of the grounding; and as between June 14 and June 15, on the former date, the New Bedford-Fairhaven bridgetender's records place the VENUS at the bridge at an evening hour, leaving no time for a westbound grounding at Woods Hole that evening. Second, Packer's expert testified that, based on the testimony of the crew members aboard the VENUS at the time of the grounding, whose testimony included statements that the grounding occurred at a sunset low tide in foggy conditions, the most likely date of the grounding was June 15, according to tide tables and weather records.

New Bedford.  According to VENUS crew member David Correia, whom the district court found very credible, after an incoming tide freed the VENUS from the ledge at Woods Hole, the tug proceeded on to New Bedford, arriving sometime in the early morning of June 16.  Yet, on June 16, certain records (uncontested by Packer) indicate that on that date the VENUS transported the ALGOL 500 westbound from Martha's Vineyard to New Bedford.[3]  Thus, if plaintiff's theory that the grounding occurred on June 15 is to be believed, it must also be believed that immediately after arriving in New Bedford after the grounding, the VENUS turned around, transported the ALGOL 500 back to Martha's Vineyard, and then transported it back again to New Bedford later that day (completing a "do-si-do," to use plaintiff's term).

While the district court found that, as a matter of physics, the VENUS could have traveled this circuitous route in the time period posited (at least if running at full speed in ideal conditions), it nonetheless found that, as a matter of motive, the scenario was implausible.  In particular, it questioned why the VENUS would have towed the ALGOL 500 from Martha's Vineyard to New Bedford on the evening of June 15, only to turn around and make the same trip again the next day, for no apparent reason.  Packer urged a conspiratorial

---

[3]    Packer does not contend that June 16 could have been the date of the grounding, since the crew aboard the VENUS on that date (according to the VENUS log) does not match the crew that both parties agree was aboard at the time of the grounding.

motive for the do-si-do: it argued that Tucker-Roy sought to cover its tracks, by sneaking the ALGOL 500 back to Martha's Vineyard and towing it again on the evening of June 16, so as to make it appear as if the ill-fated voyage of the previous night had never occurred.  But the district court saw little logic behind the conspiracy theory, and found no evidence in the record to corroborate it.[4]  Consequently, the district court found that Packer had failed to meet its burden of proving that the grounding stipulated to by the parties occurred on June 15, a fact on which plaintiff concedes its theory of causation depends.

On appeal, Packer argues that its circumstantial evidence that the grounding occurred on June 15 is so persuasive as to necessitate a finding that the conspiratorial do-si-do occurred, regardless of how implausible the conspiracy theory may be in the abstract.  We acknowledge that Packer's circumstantial evidence of the date of the grounding is strong, but we simply cannot say that it is so impervious to doubt as to render the trial court's judgment clearly erroneous.  Packer's circumstantial case did, after all, ultimately rest on records that were not wholly accurate and complete, and on the testimony of witnesses whose memories were not entirely clear and

---

[4]      The court further speculated that it was just as likely that the ALGOL 500 was damaged sometime in 1994-95 while in the hands of the plaintiff, who towed the barge using its own tug approximately ninety percent of the time.

5

consistent.  The trial judge thus acted within his bounds in finding that the evidence, when leveraged against the implausibility of the conspiratorial do-si-do story, was not weighty enough to tip the scales in the plaintiff's favor.[5]

In addition to challenging the district court's factual findings, Packer also argues that the district court committed legal error by not shifting to the defense the burden of production or proof as to the date of the grounding incident.  Given that Tucker-Roy did not make any record of the incident in the VENUS log, nor report the incident to the Coast Guard as required under Coast Guard regulations, see 46 C.F.R. § 4.05-1, Packer argues that it is Tucker-Roy's fault that there is no direct evidence of the date of the grounding. Accordingly, Packer contends, the defendants should bear the burden of producing evidence of when the incident occurred; Tucker-Roy should not be allowed to benefit from its own lack of documentary diligence.

---

[5]     Packer also contends that the district court's conclusion rests on a mistake of fact, in that the court, in describing the hypothesized do-si-do, remarked that the VENUS was apparently unobserved by the New Bedford-Fairhaven bridgetender on a certain leg of the voyage.  Packer argues that the VENUS would not have had to pass under the bridge during the course of the do-si-do, so the court's suggestion that the tug would have been observed by the bridgetender during the do-si-do was mistaken.  We are not convinced that the district court was mistaken in its remark, but in any event the remark -- merely a four-word parenthetical -- was made in the course of the court's exegesis of the plaintiff's theory, not in the court's rejection of it.  There is simply no indication that the belief expressed by the remark to any extent served as a ground for the district court's decision.

However, Packer does not point us to, and we have been unable to locate, any case standing for the proposition that a defendant's failure to report an accident has any effect on the allocation of burdens.  Packer does cite to Sternberg Dredging Co. v. Moran Towing & Transp. Co., 196 F.2d 1002 (2d Cir. 1952) (L. Hand, J.), for the proposition that: "It is often a controlling factor in deciding where to throw the burden of producing evidence . . . that the proper party to charge is he who alone could discover the truth."  Id. at 1006.  But taken in isolation that proposition is clearly an overstatement.  See Stevens v. The White City, 285 U.S. 195, 202-03 (1932) (holding that, as to allocation of burdens, it is not "material that the facts of the case, and the causes of the collision, are peculiarly within the knowledge of the respondents. . . . We are not aware [ ] of any ground on which such an inconvenience can affect the rule of law which governs the rights of the parties." (internal quotation marks omitted)).

Rather, the core holding of Sternberg Dredging is simply that, where a defendant negligently fails to inspect a barge in tow after it appears to be damaged, the defendant will be presumed at fault if the barge founders soon thereafter.  See South, Inc. v. Moran Towing & Transp. Co., 360 F.2d 1002, 1006 (2d Cir. 1966).  The case at bar, by contrast, is a long step away from this fact pattern.  Here, the pivotal question is not whether Tucker-Roy's negligence in running aground while towing the ALGOL 500 should be presumed to have caused

7

its damage; rather, the pivotal question is whether, when the grounding occurred, Tucker-Roy was towing the ALGOL 500 in the first place. The same distinction undermines all of the plaintiff's other citations to maritime cases shifting burdens of production or proof to the defendant: in all of the cases, there was no issue as to whether the defendant was towing plaintiff's barge when it was damaged; the issue was whether, given that the defendant was towing the barge when it was damaged, fault should be presumed. See, e.g., Tug Ocean Prince, Inc. v. United States, 584 F.2d 1151, 1160 (2d Cir. 1978) (citing The Pennsylvania, 86 U.S. (19 Wall.) 125, 136 (1874)); Mid-America Transp. Co. v. Nat'l Marine Serv., Inc., 497 F.2d 776, 777-78 (8th Cir. 1974); The Clarence P. Howland, 16 F.2d 25, 26 (2d Cir. 1926).

In conclusion, we cannot say there was clear error in the trial court's refusal to find that the VENUS ran aground on June 15 with the ALGOL 500 in tow; nor did the court err as a matter of law in not reallocating burdens on the issue. Accordingly, the judgment of the trial court is affirmed.